# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROY HUNT, | : | No. 4:16-CV-01729 |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| POTTER COUNTY, | : | |
| GLENN C. DRAKE, II, | : | |
| SUSAN KEFOVER, | : | |
| PAUL HEIMEL, | : | |
| DOUGLAS MORLEY, | : | |
| ANGELA MILFORD, | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### MAY 17, 2017

**I.     BACKGROUND**

Plaintiff was a corrections officer at the Potter County Jail for fourteen years prior to his February 2016 termination. He brings the instant action, three counts of First Amendment retaliation and a count pursuant to Pennsylvania's Whistleblower Law, against Potter County, its three county commissioners, the county sheriff and jail warden, and the deputy warden. Defendants have moved to dismiss the complaint asserting that the action must proceed under the terms of a collective bargaining agreement. Because Plaintiff's claims do not arise under, nor require interpretation of the collective bargaining agreement, Defendants' motion will be denied.

1

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[1] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[2] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[3]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[4] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking

---

[1] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[2] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[3] *Neitzke*, 490 U.S. at 327.

[4] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

was appropriate under the Federal Rules."[5] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[6]

Accordingly, after Twombly and Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[9] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[10]

---

[5] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009), *Wasserman, supra* at 319-20.

[6] *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that Twombly retired the Conley no-set-of-facts test").

[7] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

[8]*Iqbal,* 556 U.S. at 678.

[9] *Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[10] *Twombly*, 550 U.S. at 556.

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[12]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[13] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[14] "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[15] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[16]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

---

[11] *Iqbal*, 556 U.S. at 679.

[12] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[13] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[14] *Iqbal*, 556 U.S. at 678 (internal citations omitted).

[15] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[16] *Iqbal*, 556 U.S. at 678.

Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[17]

I turn now to the Plaintiff's factual allegations, which I must accept as true on a Rule 12(b)(6) motion.

B.     Facts alleged in the complaint

Plaintiff, Roy Hunt, hereinafter "Hunt," was hired in 2002 as a corrections officer at the Potter County Jail. Defendant Potter County is the government entity that presumably owns and operates the Potter County Jail. Defendant Glenn Drake, II, hereinafter "Drake," is the Warden of the Potter County Jail. Defendant Angela Milford, hereinafter "Milford," is the Deputy Warden of the Potter County Jail. Defendants Susan Kefover, hereinafter "Kefover;" Paul Heimel, hereinafter "Heimel;" and Douglas Morley, hereinafter Morley," are Potter County Commissioners.

Hunt was both a corrections officer in the jail and a shop steward for the jail's labor union. "Pursuant to his official duties as shop steward, Plaintiff would routinely participate in union activity, including[,] but not limited to[,] meeting with Potter County and Jail management on union matter, negotiating collective

---

[17] *Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

bargaining agreements, resolving issues with working conditions, assisting employees facing disciplinary action, filing grievances, investigating grievances, and adjusting grievances and dispute."[18] "Plaintiff was a vocal proponent of enforcing the collective bargaining agreements throughout his time at the jail."[19]

"Traditionally, Potter County has employed the individual who is the current Sheriff of Potter County, an elected County official, as the Warden of the jail."[20] In 2015, the incumbent sheriff did not run for re-election. Plaintiff, Defendant Drake, and another corrections officer, Ralph Briggs, Sr., hereinafter "Briggs," ran for the vacant position.

"Prior to the primary election in May 2015, it came to Plaintiff's attention that Defendant Drake was conducting election activities on County property, in his corrections officer uniform, and during time that he was to have been at work for the County, in direct violation of prevailing law."[21] Hunt reported this to the Pennsylvania Office of Attorney General. "Defendant Drake became aware of this report almost immediately and angrily confronted Plaintiff."[22] Drake was ultimately elected Sheriff and subsequently became the Warden of the Potter

---

[18] ECF No. 1 at 2.

[19] ECF No. 1 at 3.

[20] ECF No. 1 at 3.

[21] ECF No. 1 at 3.

[22] ECF No. 1 at 3.

6

County Jail on January 4, 2016.

"Upon Defendant Drake's becoming Warden of the jail, he met with Plaintiff and a union representative and discussed leaving the election issues in the past."[23] "Almost immediately after Defendant Drake became Warden, Defendants Drake and Milford began to initiate unfounded disciplinary warnings for violations of cell phone protocols instituted by Defendant Drake and allegedly witnessed by Defendant Milford, to which Plaintiff filed grievances."[24]

Drake terminated Briggs on January 13, 2016, a decision ratified by the Potter County Commissioners on January 21, 2016. Hunt, as union steward, filed a grievance on Briggs's behalf. Hunt, on behalf of Briggs, ordered video surveillance footage from the jail, because "part of the termination case against Mr. Briggs was that he was accused of sleeping on the job, which was false."[25] Hunt ordered the footage because "Defendants Drake and Milford, at least, were aware of other corrections officers sleeping on the job in the jail control room, who had not been disciplined and that this sleeping was depicted on various surveillance tapes from February 14, 2016."[26]

---

[23] ECF No. 1 at 3.

[24] ECF No. 1 at 4.

[25] ECF No. 1 at 4.

[26] ECF No. 1 at 4.

On February 18, 2016, Hunt contacted Kefover to obtain the surveillance footage requested. Kefover told Hunt that she would have to ask "the solicitor in order to determine if she could provide the video."[27] "On February 23, 2016, Defendants Drake and Milford met with Plaintiff and a union representative and terminated him" for "his 'insubordination' by approaching Defendant Kefover to request the surveillance video."[28] The Potter County Commissioners later ratified Hunt's termination.

C. Analysis

Hunt brings four claims against Defendants. The first three are allegations of First Amendment retaliation pursuant to 42 U.S.C. § 1983. Count I is retaliation in violation of his right to free speech; Count II is retaliation in violation of his right to associate; Count III is retaliation for his political activity. Count IV is a claim that Hunt was terminated in violation of Pennsylvania's Whistleblower Law, 43 P.S. § 1421.

Defendants argue under both Federal Rules of Civil Procedure 12(b)(1) and (6) that a collective bargaining agreement, hereinafter "CBA," governs the dispute and that Hunt did not exhaust his administrative remedies under the CBA pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and his

---

[27] ECF No. 1 at 4.

[28] ECF No. 1 at 5.

claims are preempted by both Section 301 of the Labor Management Relations Act and Sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. § 157.[29]

I have reviewed with particularity the Defendants' arguments. I believe that they misapprehend the nature of this action. Simply by virtue of the existence of a CBA, does not imply that Plaintiff's claims necessarily arise out of the CBA, nor do they require interpretation of the CBA, nor are they governed by the CBA. Plaintiff's claims appear independent of the CBA. Specifically,

> Section 301 of the Labor Management Relations Act "LMRA" states:
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.[30]

"Congress's purpose in enacting § 301 of the LMRA was to create a uniform doctrine of federal labor law because "the subject matter of § 301(a) is peculiarly

---

[29] In addition, for the first time in their reply brief, Defendants argue that the Pennsylvania Public Employee Relations Act, 43 Pa. C.S.A. § 1101.101, *et. seq*., requires Hunt to submit his claims to binding arbitration. "A Court generally will not consider arguments raised for the first time in a reply brief. " *Black Cat Expl. & Prod., LLC v. MWW Capital Ltd.*, No. 1:15-CV-51-BL, 2015 WL 12731751, at *3 (N.D. Tex. Apr. 29, 2015). Local Rule 7.7 of the Middle District of Pennsylvania sets forth that a "reply to matters argued in respondent's briefs may be filed." Defendants argument based on the Pennsylvania Public Employee Relations Act was not in "reply to matters argued" in Plaintiff's brief. Accordingly, I will not consider these arguments that were raised for the first time in a reply brief.

[30] 29 U.S.C. § 185(a).

9

one that calls for uniform law."[31] "As the Supreme Court explained, because individual contract terms could have different meanings under state and federal law, 'the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.'"[32] "However, the LMRA only pre-empts state law claims that require the interpretation of the labor agreement, and says nothing about the substantive rights ... when adjudication of those rights does not depend upon the interpretation of such agreements."[33]

Moreover, "Section 301 [of the LMRA] preempts an application of state law "only if such application requires the interpretation of a collective-bargaining agreement."[34] "§ 301(a) is more than jurisdictional- it authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements."[35] "A state-law claim is preempted by § 301 if the claim is (1) founded

---

[31] *Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368, 374 (E.D. Pa. 2014) *citng Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (*quoting Pennsylvania R. Co. v. Public Service Comm'n*, 250 U.S. 566, 569, 40 S.Ct. 36, 63 L.Ed. 1142 (1919)) (internal quotations omitted).

[32] *Caselli, supra citing Lucas Flour* 369 U.S. at 103.

[33] *Caselli citing Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 408-09 (1988).

[34] *Jones v. Roadway Exp., Inc.*, 931 F.2d 1086, 1089 (5th Cir. 1991) citing *Lingle v Norge Div. Of Magic Chef, Inc.* 486 U.S. 399, 413 (1988).

[35] *Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 484, 450–51 (1957).

directly on rights created by collective-bargaining agreements or (2) substantially dependent on analysis of a collective bargaining agreement."[36] The preemptive force of § 301 applies to tort as well as contract actions. Section 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."[37]

I review the pertinent provisions of the National Labor Relations Act at length. Section 7 states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.[38]

Section 8 of that Act states, in relevant part:

> a) Unfair labor practices by employerIt shall be an unfair labor practice for an employer--
>
> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
> (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited

---

[36] *Shanefelter v. U.S. Steel Corp.*, 784 F. Supp. 2d 550, 558 (W.D. Pa. 2011).

[37] *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 219, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985).

[38] 29 U.S.C.A. § 157.

from permitting employees to confer with him during working hours without loss of time or pay;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: Provided, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: Provided further, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

*****

(c) Expression of views without threat of reprisal or force or promise of benefit. The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no

threat of reprisal or force or promise of benefit.

(d) Obligation to bargain collectively. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: Provided, That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification--(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:The duties imposed upon employers, employees, and labor organizations by paragraphs (2) to (4) of this subsection shall become inapplicable upon an intervening certification of the Board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representative of the employees subject to the provisions of section 159(a) of this title, and the duties so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the

contract. Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158, 159, and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer.[39]

It is well-settled that "as a general rule, disputes between parties to a collective bargaining agreement are preempted by the National Labor Relations Act "NLRA" and are within the exclusive jurisdiction of the NLRB"[40] The seminal case in this area is the United States "Supreme Court's decision in *San Diego Building Trades Council v. Garmon*[41] [is] known as *Garmon* preemption." "*Garmon* preemption protects the exclusive jurisdiction of the NLRB over unfair labor practice proceedings; accordingly, if a cause of action implicates protected concerted activity under section 7 of the NLRA or conduct that would be prohibited as an unfair labor practice under section 8 of the NLRA, the cause of action is preempted."[42] The National Labor Relations Act "does not preempt state court actions where the complained of conduct is only peripherally concerned with the NLRA."[43] "It logically follows that a state-law claim is not preempted as long

---

[39] 29 U.S.C.A. § 158.

[40] *Roberts v. Caesar's Entm't, Inc.*, 72 F. Supp. 3d 575, 583 (E.D. Pa. 2014) *citing San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959).

[41] 359 U.S. 236 (1959).

[42] *Voilas v. Gen. Motors Corp.,* 170 F.3d 367, 378 (3d Cir. 1999).

[43] *Roberts, supra, citing Garmon, supra.*

as it can be resolved without interpreting the agreement itself."[44]

"Statutes that purport to establish rights that are independent of rights under a collective bargaining agreement are not necessarily preempted even if they relate to the agreement in some way."[45] "An employer cannot simply hide behind the arbitration provisions of a collective bargaining agreement to bypass his or her employees'' statutory right not to be discriminated against."[46]

Many federal law claims, including First Amendment Retaliation claims,[47] are not preempted by § 301 of the Labor Relations Act by the CBA.[48] "Employee's failure to utilize or exhaust remedies available under collective bargaining agreement (CBA) did not preclude ADA claim, where her claims were purely based on her statutory rights and did not involve contractual provisions of

---

[44] *Id.* (internal citations omitted).

[45] *McCall v. Chesapeake & Ohio Ry. Co.*, 844 F.2d 294, 300 (6th Cir. 1988).

[46] *Id.*

[47] *See Lohman v. Borough, No.* CIV.A. 3:05-CV-1423, 2007 WL 4260943, at *3 (M.D. Pa. Nov. 29, 2007) (Caputo, J.), *and see Michael v. Quaker Valley Sch. Dist.,* No. 2:16-CV-00473, 2017 WL 639374, at *5 (W.D. Pa. Feb. 16, 2017).

[48] *See Shanefelter v. U.S. Steel Corp.*, 784 F. Supp. 2d 550, 558 (W.D. Pa. 2011) (holding that Plaintiff's [Title VII] retaliation claim is her only surviving cause of action, as it is not substantially dependent on the terms of the BLA and therefore is not preempted by § 301; *see also Roberts v. Caesar's Entm't, Inc.,* 72 F. Supp. 3d 575, 584 (E.D. Pa. 2014) (holding that "Although the amended complaint references the collective bargaining agreement and union activity [including claim that Caesar's "wrongfully retaliated against them for asserting their contractual rights to fair pay and fair working conditions under the terms of their union collective bargaining agreement" and that Caesar's maliciously prosecuted plaintiffs and wrongfully used civil proceedings against them "retribution for exercising their union collective bargaining rights." it does not assert any violation of the NLRA.).

CBA."⁴⁹

The United States Court of Appeals for the Ninth Circuit has held that §1983 claims of Plaintiff are not statutorily preempted:

> Section 1983 provides a remedy for violation of a federal right, whether founded in the Constitution or federal statute, unless Congress forecloses that remedy "by providing a comprehensive enforcement mechanis[m] for protection of [that] federal right." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) ( "*Golden State II*") *(quoting Smith v. Robinson*, 468 U.S. 992, 1003, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). Because the plaintiffs base their § 1983 claim primarily on the violation of their federal right of concerted action under § 7 of the NLRA, Rainbow argues that the NLRA enforcement scheme precludes a remedy under § 1983. This argument is clearly insufficient when applied to the governmental defendants. As *Golden State II* itself makes clear, Congress in the NLRA has provided "no comprehensive enforcement scheme for preventing state interference with federally protected labor rights that would foreclose the § 1983 remedy." *Id.* at 108-09, 110 S.Ct. 444. It follows, therefore, that the § 1983 claims against the public defendants are not precluded.⁵⁰

Additionally, even if Defendants had moved to compel arbitration, it would have had no preclusive effect on the instant matter. "It is apparent, therefore, that in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial."⁵¹ "Consequently, according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights

---

⁴⁹ *Nieves v. Individualized Shirts*, 961 F. Supp. 782 (D.N.J. 1997).

⁵⁰ *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 780 (9th Cir. 2001).

⁵¹ *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 292 (1984).

that the statute is designed to provide."⁵² Our Supreme Court has "held that in a § 1983 action, a federal court should not afford res judicata or collateral-estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement."⁵³

Finally, Hunt's claim under the Pennsylvania Whistleblower Law,⁵⁴ does not rely on an interpretation of the CBA, but is related to Hunt's report to the Office of Attorney General of alleged wrongdoing and waste. This claim is therefore not preempted either.⁵⁵

## III. CONCLUSION

I will deny Defendants' motion to dismiss, having concluded that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement is preempted by § 301 or other provisions of the federal labor law."⁵⁶

---

⁵² *Id.*

⁵³ *Id.*

⁵⁴ 43 P.S. § 1421.

⁵⁵ *See Patterson v. Exxon Mobil Corp.*, 262 F. Supp. 2d 453, 459 (D.N.J. 2003) (holding that Section 301 of the LMRA did not preempt a New Jersey whistleblower claim where the issues to be resolved do not rely on interpretation of the CBA)

⁵⁶ *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. 1904.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge