# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROY HUNT, | No. 4:16-CV-01729 |
| Plaintiff. | (Judge Brann) |
| v. | |
| POTTER COUNTY, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 5, 2018

Defendants moved for summary judgment on all counts of Roy Hunt's complaint. For the reasons that follow, Defendants' motion will be granted.

### I. BACKGROUND

At the beginning of 2015, Plaintiff Roy Hunt was employed as a corrections officer at the Potter County Jail. In February of that year, he began campaigning for Potter County Sheriff, running in the primary against Defendant Glenn Drake, II, and fellow employee Ralph Briggs. Mr. Hunt's and Mr. Briggs's campaigns ended when Mr. Drake won the primary election in May 2015.

Mr. Drake went on to win the general election as well, and was sworn in as sheriff on January 4, 2016. Nine days later, on January 13, 2016, Mr. Drake fired Mr. Briggs. Mr. Hunt, in his role as a union representative, filed a grievance

challenging that termination on January 25, 2016. Eight days later, on February 2, 2016, Mr. Hunt was disciplined for violating the Jail's policy on employee cell phone use. He filed a grievance challenging his disciplinary warning on February 9, 2016.

While the two grievances were pending, Mr. Hunt reported fellow officers for allegedly sleeping on the job. Because Mr. Briggs had been seriously reprimanded for similar behavior back in October 2015, Mr. Hunt, in an effort to bolster his grievance on behalf of Mr. Briggs, approached one of the County Commissioners, Defendant Susan Kefover, to request a copy of surveillance tapes that Mr. Hunt believed show the fellow officers sleeping.

A few days later, on February 23, 2016, Mr. Drake terminated Mr. Hunt. In deposition, Mr. Drake indicated that Mr. Hunt was fired because he was "obstinate, arrogant, insolent, disrespectful, [and] insubordinate"—in other words, because he was a "terrible employee."[1] Although Mr. Drake mentioned a number of specific examples of such behavior, he stated that Mr. Hunt's decision to bypass the Jail's chain of command and approach Ms. Kefover directly about the surveillance tape "was the straw that broke the camel's back."[2]

---

[1] Deposition of Glenn Drake (ECF No. 27-2) at 77.

[2] *Id.* at 105.

Mr. Hunt settled his own grievance on June 23, 2016, but proceeded to initiate the above-captioned action on August 18, 2016. His four-count complaint alleges that the discipline imposed on him was in retaliation for his decision to campaign for Potter County Sheriff against Mr. Drake, for speech made in connection with that campaign, and for speech made in his role as union representative.[3]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[5] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's

---

[3] ECF No. 1.

[4] Federal Rule of Civil Procedure 56(a).

[5] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3rd Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986).

favor.[6] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[7]

> **B. Whether Mr. Hunt Was Required to Exhaust the Collective Bargaining Agreement's Grievance Procedure**

Defendants argue that Mr. Hunt's claims are preempted by his failure to exhaust the administrative remedies available to him—*i.e.*, by his choice to settle his grievance with Potter County before entering into binding arbitration as provided for by the Collective Bargaining Agreement. This Court disagrees.

The Collective Bargaining Agreement covering Mr. Hunt's employment relationship with Potter County provided a three-step grievance-resolution procedure for "[a]ll disputes and any grievance . . . relating to the application or interpretation of th[at] Agreement or any dispute concerning the wages, hours[,] and working conditions of the employees covered by this Agreement."[8] Mr. Hunt's claims, however, do not "relat[e] to the application or interpretation" of the Collective Bargaining Agreement, nor do they "concern[ Mr. Hunt's] wages, hours[, or] working conditions." Instead, they seek to vindicate his rights under the United States Constitution and the Pennsylvania Whistleblower Law. Further, Defendants have pointed to no authority—nor can this Court find any—showing an

---

[6] Federal Rule of Civil Procedure 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

[8] Collective Bargaining Agreement (22-5) Art. 32 § 1.

exception to the normal rule that "exhaustion is not a prerequisite to an action under § 1983."[9]

Mr. Hunt's claims, then, are not barred by a failure to exhaust the Collective Bargaining Agreement's grievance procedure.

### C. Whether Mr. Hunt's Claims Are Preempted by 29 U.S.C. § 185

Defendants also argue that Mr. Hunt's state law claims are preempted by 29 U.S.C. § 185. This Court disagrees.

The United States Supreme Court has indicated that federal common law—not state law—governs disputes under 29 U.S.C. § 185.[10] That statute, however, applies only to "[s]uits for violation of contracts between an employer and a labor organization." As noted above, Mr. Hunt's suit alleges violations of the United States Constitution and the Pennsylvania Whistleblower Law, not violations of the Collective Bargaining Agreement. Additionally, the statute is inapplicable when the "employer" in question is a "State or political subdivision thereof."[11] And Potter County, of course, is a political subdivision of the Commonwealth of Pennsylvania.

---

[9] *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 500-501 (1982); *see, e.g.*, 42 U.S. § 1997e(a) (prohibiting § 1983 suits by prisoners "until such administrative remedies as are available are exhausted").

[10] *See Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 102 (1962).

[11] *See* 29 U.S.C. § 152(2) (defining "employer" to exclude "any State or political subdivision thereof"); *id.* § 142(3) (applying that definition of "employer" to the entirety of Chapter 7 of Title 29, which Chapter includes 29 U.S.C. § 185).

Mr. Hunt's claims, then, are not preempted by 29 U.S.C. § 185.

### D. Whether Mr. Hunt's Claims Are Preempted by the Pennsylvania Public Employee Relations Act

Defendants further argue that Mr. Hunt's claims are preempted by the Pennsylvania Public Employee Relations Act[12] ("PERA"). This Court disagrees.

First, Defendants note that 43 P.S. § 1101.903 requires arbitrations of "disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement." Mr. Hunt's claims, however, arise out of an interpretation of the United States Constitution and the Pennsylvania Whistleblower Law, not the Collective Bargaining Agreement. Second, Defendants note that the Pennsylvania Labor Relations Board ("PLRB") has exclusive jurisdiction[13] over claims alleging "unfair practices by public employers,"[14] and that interfering with a public employee's right to participate in union activities is considered an "unfair practice."[15] Again, however, Mr. Hunt's claims allege constitutional and state law violations, not unfair labor practices.

Mr. Hunt's claims, then, are not preempted by the PERA.

---

[12] 43 P.S. § 1101.101 *et seq.*

[13] *Id.* § 1101.1301.

[14] *Id.* § 1101.1201.

[15] *Id.* § 1101.401.

### E. Whether Mr. Hunt Has Produced Evidence Sufficient to Sustain His Retaliation Claims

To prevail on any of Mr. Hunt's retaliation claims, he must show a causal connection between protected activity and an adverse employment action taken against him.[16]

As examples of protected conduct, Mr. Hunt points to his 2015 campaign for sheriff, including statements made around the time of that campaign, and to activities undertaken in his role as union representative, including his surveillance tape request to Ms. Kefover. As examples of adverse employment actions allegedly taken in retaliation for that conduct, Mr. Hunt points to the discipline he received for violating the Jail's cell phone policy and his termination. At most, the record evidence supports finding a causal connection between Mr. Hunt's request for surveillance tapes and his termination.[17]

That connection rises to the level of a constitutional violation, however, only if Mr. Hunt was speaking "on a matter of public concern" during his interaction

---

[16] *See, e.g., Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013) (noting that a plaintiff bringing a political association retaliation claim must show "that the constitutionally-protected conduct was a substantial or motivating factor for the adverse employment action"); *Baldassare v. State of N.J.*, 250 F.3d 188, 195 (3d Cir. 2001) (noting that a plaintiff bringing a free speech retaliation claim must show "that the protected activity was a substantial or motivating factor in the allegedly retaliatory action").

[17] Mr. Hunt's claim under the Pennsylvania Whistleblower Law is based on an alleged causal connection between his campaign activity and his discipline or his termination. Because there is no evidence supporting such a connection, this state law claim fails.

with Ms. Kefover.[18] The Supreme Court had indicated that this "public concern" inquiry involves consideration of "the content, form, and context of a given statement, as revealed by the whole record."[19] It has also noted, however, that "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark . . . would plant the seed of a constitutional case."[20]

As a matter of law, this Court believes that Mr. Hunt's speech comprising his request for surveillance tapes was not on a matter of public concern.[21] Although the hiring and firing decisions of an elected official may certainly concern the public, there is no indication here that Mr. Hunt was on a mission to influence Potter County voters' decision during the next election for sheriff, nor is there any indication that his speech—a mere request for surveillance tapes—could have done so. Instead, Mr. Hunt himself admits that he sought the surveillance tapes solely to help Mr. Briggs grieve his termination, a "matter[] only of personal

---

[18] *Connick v. Myers*, 461 U.S. 138, 146 (1983).

[19] *Id.* at 147-48.

[20] *Id.* at 149.

[21] When the adverse employment action at issue is alleged to be caused solely by a plaintiff's union membership, the plaintiff need not satisfy the "public concern" element. *Palardy v. Township of Millburn*, 906 F.3d 76 (3d Cir. 2018). One could argue (though this Court does not read Mr. Hunt's brief as doing so) that Mr. Hunt's termination was retribution for his union membership as such. At most, however, the evidence supports finding a causal connection between his termination and *speech* that happened to have been made in his union capacity (*i.e.*, his request for surveillance tapes), not between his termination and his decision to join and remain in the union.

interest" to the two men involved.[22]  Mr. Hunt's "attempt to constitutionalize the employee grievance," therefore, must be denied.

### III.  CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment will be granted.  An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[22]  *Id.* at 147.